IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MARION WARREN | § | |
| v. | § | CIVIL ACTION NO. 6:11cv388 |
| WARDEN RUPERT, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Marion Warren, an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se,* filed this lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the lawsuit pursuant to 28 U.S.C. §636(c). As Defendants, Warren named Warden Rupert, Lt. Christopher Poole, Sgt. Larry Young, and Officer L.S. Shead.

An evidentiary hearing was conducted on October 17, 2011, pursuant to <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Warren stated that in June of 2010, he was at the Coffield Unit. He filled out a confidential informant form with the Office of the Inspector General, working with an officer named Cleland, who secured the assistance from a lieutenant named Hatt. Cleland was conducting an investigation into smuggling of contraband onto the unit by officers, and cell searches were done, including searches by Sgt. Young.

Warren stated that Young became angry with him over this, and retaliated against him by writing Warren a disciplinary case for an incident which did not occur. As a result of this case, Warren states that he was moved from P-6 dormitory to P-4 cell housing; he stated in his amended complaint that Young told Officer Whitten to announce to the dayroom that Warren was a "rat," which Whitten did when Young arrived.

Warren filed a life endangerment complaint against Young on May 14, 2010, and the investigation was conducted by Lt. Poole. Warren says that while he was in the office, Poole picked up the phone, called Young, and said "say dog, I got this fool in my office filing an inmate protection investigation on you." Poole then said Warren's name, followed by "all right, I'll let you know." Warren says that Poole "wrote the matter off as being frivolous to release his friend."

In May of 2011, Warren says, Officer Shead began writing him false disciplinary cases, noting that he had filed grievances against her. He says that at the time that one of the cases charged that he had threatened her, he was already in pre-hearing detention. He stated that Shead wrote three false disciplinary cases against him, and that as a result, he lost his "line class." Warren stated that he was supposed to be eligible for parole next year but that he could not be considered for parole unless his line classification was restored. He again filed life endangerment complaints, but these were blocked by Poole, who said that Warren "could not file a life endangerment claim on an officer."

Following the hearing, Rupert and Poole were dismissed from the lawsuit. The claim that Young was deliberately different to Warren's safety by having Whitten announce that Warren was a "rat" was also dismissed.[1] The remaining claims in the lawsuit are Warren's assertions that Sgt. Young filed a false disciplinary case on him in retaliation for his having served as an informant for the Office of the Inspector General, and that Shead filed false disciplinary cases on him in retaliation for his having filed grievances on her. Shead and Young have filed a motion for summary judgment based on the issue of qualified immunity. Warren did not file a response to this motion.

The Defendants' Motion for Summary Judgment

In their motion, the Defendants note that Warren alleged that Shead filed a false disciplinary case on him for being out of place on May 3, 2011, and then another one the next day asserting that Warren had threatened her. The Defendants point out that Warren complained that

---

[1] Warren appealed the partial dismissal, but his appeal was dismissed for want of prosecution.

these false disciplinary cases would result in his having "very little access to general population," which they say is inconsistent with his complaint that placement in general population would endanger him. As a result of these allegedly false disciplinary cases, Warren says that he suffered demotion in his classification status and his custody level; he asks for a unit transfer and a restoration of all class status wrongfully taken. The Defendants also argue, citing a number of district court cases, that Warren must show that the disciplinary proceeding has terminated in his favor before he can maintain a Section 1983 action which would implicate the validity of this proceeding. They contend that they acted reasonably and that Warren's claims are "conclusory conjecture," which is insufficient to overcome the defense of qualified immunity.

Legal Standards and Analysis

The Defendants' assertion that Warren must show favorable termination of the disciplinary proceedings before he can maintain a Section 1983 lawsuit is not correct because Warren's claim is founded on retaliation. The Fifth Circuit has expressly held that favorable termination is not a requirement of a retaliation claim. Mahogany v. Rogers, 293 Fed.Appx. 259, 2008 WL 4111382 (5th Cir., August 27, 2008), *citing* Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).

However, this does not end the inquiry. The Fifth Circuit has held that the elements of a claim under a theory of retaliation are the invocation of a specific constitutional right, the defendant's intent to retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, which is a showing that but for the retaliatory motive, the action complained of would not have occurred. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. Woods, 60 F.3d 1161 at 1166. The relevant showing must be more than the prisoner's personal belief that he is the

victim of retaliation. Johnson, 110 F.3d at 310, *citing* Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

In this case, Warren has offered nothing beyond his own personal belief that he was the victim of retaliation. His amended complaint states as follows:

> On the 3rd day of May, 2011, at or about 7:50 p.m., defendant L.S. Shead filed a false disciplinary report against me out of retaliation for may participation in the institution safe prison program. Disciplinary report no. 20110250271, offense description indicate that on the date and time listed above, and at O Wing, 1 row dayroom, offender Warren, Marion Curtis, TDCJ no. 01564881, was in 1 row dayroom when in fact said offender had no authorization to be in such place. Also, said offender Warren made the following statement: 'You're a nigger bitch and a nigger hoe, you been sucking dick in the washroom and the Feds are going to come get you, you nigger hoe. I don't know why you keep f*cking with me bitch,' directed at charging officer Shead, L.
>
> Furthermore, on 4th day of May 2011, at or about 1:00 p.m., defendant L.S. Shead filed another false disciplinary report against me. Disciplinary report no. 20110250260, offense description indicate on the date and time listed above, and at P-3 hall in front of rotunda, offender Warren, Marion Curtis, TDCJ no. 01564881, threatened to inflict harm on Officer L. Shead in that said offender stated 'I will bust you in your head, I don't care about no case.'
>
> The defendant L.S. Shead filed the false disciplinary report against me to assist the gang members she associate with in getting me removed from B-side minimum custody general population to A-side medium custody general population, which is a more restrictive custody assignment with very little access to general population.
>
> In light of the false report, case no. 2011025071, I wish to inform the court, on the 3rd day of May, 2011, at or about 10:00 p.m., I was sent to the count desk by Officer Green, to see Officer Corbett T. Randall, Lt., because defendant L.S. Shead had notified him and falsely reported that I was using abusive language toward her. After being confronted by Lt. C.T. Randall, I was ordered by him to return to my assigned housing, at which time I did, and was placed in my cell by Officer Green.
>
> On the 4th day of May, 2011, I was awakened by Officer Christopher Kuykendall, who inform me Lt. C.T. Randall want to speak with me again. At which time I was escorted by Officer C.L. Kuykendall to the count desk. When I approach the count desk, Lt. C.T. Randall was in a rage and was slapping the desk top where the case laid, shouting at me. Shouting 'did you say this motha f*ckin sh*t?' I replied 'sir, I don't know what you're speaking of.' Lt. C.T.Randall read the disciplinary report no. 20110250271 and then repeated hisself: 'did you say this motha f*ckin sh*?' I replied 'no sir, I did not.' Lt. C.T.Randall ordered Officer Ronald P. Munsinger to place me in prehearing detention.
>
> L.S. Shead, defendant, has brought considerable harm to the plaintiff in that she has falsified state documents and charged me with three offenses that were never committed, which resulted in the plaintiff being demoted in class status and demoted

from minimum custody to medium custody, placed on cell, recreation, and commissary restrictions. The plaintiff has made several attempts to obtain relief at the administrative levels, however, the authority refuse to investigate the complaint and render the plaintiff justice.

The first disciplinary case about which Warren complains, no. 2011025071, is dated May 3, 2011, at 7:50 p.m., and reads as follows:

> On the date and time listed above, and at O Wing 1 Row dayroom, offender Warren, Marion Curtis, TDCJ-ID No. 01454881, was in 1 Row Dayroom when in fact said offender had no authorization to be in such place. Also, said offender Warren made the following statement: "You're a n*gg*r bitch and a n*gg*r hoe. You've been sucking d*ck in the washroom and the Feds are going to come get you., you n*gg*r hoe. I don't know why you keep f*cking with me bitch," directed at charging officer L. Shead.

The "additional information" section of the offense report states that Warren had no authorization to be in the dayroom because of his restrictions, which end on May 21. Once Warren was properly identified, he became verbally vulgar, repeating calling Shead a "n*gger bitch" and a "n*gg*r hoe." He then made the other abusive remarks as detailed in the offense report.

The disciplinary hearing records show that Warren had a lay-in pass from the count room for May 3, 2011, from 2:30 to 6:00 p.m., for a church class. A counsel substitute was appointed, and Warren requested as witnesses Sgt. Johnson, Lt. Randall, and Officer Dada. However, there was no Sgt. Johnson at the unit. Lt. Randall gave a statement saying that he only signed off on the case as supervisor and was not present when the incident occurred, and Officer Dada gave a statement denying any knowledge of the incident.

At the hearing, Warren testified that he had a pass for 3 p.m. to 7 p.m. in the chapel, and that he tried to get in his cell afterwards, but Dada told him to "catch the next in" and put him in the dayroom. He denied cursing at Shead and said that it was retaliation against him. Shead testified that she informed Warren of his cell restrictions and he started "fussing and cussing." The statements of Randall and Dada were read in court. Warren was found guilty based on the officer's report and testimony and given 29 days of cell and commissary restrictions, a reduction in classification status, and the loss of 30 days of good time credits.

The May 4, 2011 disciplinary case reads as follows:

> On the date and time [1:00 p.m.] listed above, and at P3 hall, in front of rotunda, Offender Warren, Marion Curtis, TDCJ-ID No. 01564881, threatened to inflict harm on Officer L. Shead in that said offender stated "I will bust you in your head, I don't care about no case."

During the investigation, Warren denied that he had committed the offense. At the hearing, Warren stated that at one o'clock in the morning, he was asleep in his cell, and did not cuss at or threaten the officer. Shead testified that Warren continued to be irate and threatened her several times because of a disciplinary case she had given him.

The third case given by Shead to Warren was on April 1, 2011. This case reads as follows:

> On the date and time [9:00 p.m.] listed above, and at U Wing dayroom, Offender Warren, Marion Curtis, TDCJ-ID No. 01564881, was in U Wing dayroom when in fact said offender had no authorization to be in such place.

The additional information on the offense report says that Warren was still on cell restrictions, meaning that he is not allowed in the dayroom until the restriction expires. At the hearing, Warren offered the defense that he had just come back from the infirmary and the officer put him in the dayroom. This case was tried as a minor case and Warren was found guilty and given 30 days of cell and commissary restrictions.

Warren offers nothing beyond his own personal belief to show that but for an alleged retaliatory motive, these disciplinary cases would not have been written. The Fifth Circuit has cautioned as follows:

> The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

Woods, 60 F.3d at 1166. The Court went on to explain that district courts must "carefully scrutinize" claims of retaliation in order to ensure that prisoners do not "inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around themselves." Woods, 60 F.3d at 1166; *accord*, Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990) (noting that "while a

prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform."). As the Eighth Circuit explained, any other rule would allow a prisoner to openly flout prison regulations after filing a grievance and then bring a claim under Section 1983 arguing that prison officials disciplined him in retaliation for filing a grievance. Orebaugh, 910 F.3d at 528. In the absence of any showing that these disciplinary cases were retaliatory, Warren's claim on this point is without merit.

The fact that Warren may have filed grievances against Shead before these disciplinary cases were written also does not show that these disciplinary cases were necessarily written in retaliation for the grievances. In Reese v. Skinner, 322 Fed.Appx. 381, 2009 WL 1066997, the Fifth Circuit held that an allegation that "harassment of [the plaintiff] intensified after he started filing grievances" was insufficient to show retaliation; the Fifth Circuit said, citing Strong v. University HealthCare Systems, LLC, 482 F.3d 802, 808 (5th Cir. 2007) that "temporal proximity is insufficient to prove 'but for' causation." This comports with prior Fifth Circuit case law holding that the mere fact that one incident precedes another is not proof of a causal connection; this is the logical fallacy of *post hoc ergo propter hoc* (after this, therefore because of this). Huss v. Gayden, 571 F.3d 442, 459 (5th Cir. 2009) (noting that "the *post hoc ergo propter hoc* fallacy [after this, therefore because of this] assumes causality from temporal sequence," which is a "false inference"); Tampa Times Co. v. National Labor Relations Board, 193 F.2d 582, 583 (5th Cir. 1952) (*post hoc ergo propter hoc* is not sound logic). Because Warren has wholly failed to show that the disciplinary cases which he received from Shead were in retaliation for his having filed grievances on her, his claim against Shead is without merit.

Warren also complains that Sgt. Young filed a false disciplinary case on him in retaliation for his having served as an informant for the Office of the Inspector General. This disciplinary case, no. 20100269966, is dated May 14, 2010, and reads as follows:

> On the date and time [1:00 p.m.] listed above, and at P6 2 Bld Corridor, Offender Warren, Marion Curtis, TDCJ-ID No. 01564881, did become loud and belligerent with the officers on Two Bld at which point the officers called me which resulted in a significant disruption of operations in that such act caused the count of P-6 offenders to be stopped. Furthermore, he was ordered by Sgt. L. Young to accept and move into 2B 88 and said offender failed to obey the order because he did not want to.

In Step One grievance no. 2010157867, Warren says that on May 14, 2010, he made several attempts to tell the control officer in the picket that all of his property had been stolen and he needed to see a supervisor. At 2:45 p.m., Officer Dowd came to speak with him, and Warren asked him to tell the sergeant or lieutenant that he, Warren, needed to speak to one of them. Dowd took Warren's name and number and notified Sgt. Young; however, when Young came, he told Warren that "I know who you are, you're the one started all the sh*t around here about drugs." He handcuffed Warren and took him to X Wing.

After being placed in the cell at X Wing, Warren states that he told the wing officer that his life was in danger. A life endangerment investigation was begun. Warren told the investigator that he was being threatened "because I gave some information to Lt. Hatt and OIG concerning drugs." He indicated that he had provided information to an OIG officer named Cleland.. Lt. Hatt was interviewed and said that Warren is not an informer for him and that he did not know what Warren was talking about.[2]

On May 18, Warren went before the Unit Classification Committee. The report from the committee hearing states that Warren had "good demeanor" and that "during UCC, offender states that he is not in any danger and that the story in the OPI [i.e. the offender protection investigation complaint] is false. Waives OPI." A spot was set out for Warren's signature and he signed the report.

---

[1]According to an inter-office communication dated February 28, 2012, OIG Investigator James Cleland stated that Warren had provided information to him about a cell phone charger and drill bits in 2009, but Cleland stopped using Warren as an informant in 2010 because Warren was a "chronic disciplinary problem."

8

Even assuming the truth of Warren's assertions, he has failed to show that but for the alleged retaliatory motive, he would not have received the disciplinary case. This is particularly true in light of the fact that Warren acknowledged at the Unit Classification Committee meeting that his life endangerment complaint was false, as shown by his signature on the UCC report. Young's statement to Warren that "I know who you are, you're the one who started all the sh*t around here about drugs" does not itself show that Young would not have given Warren the disciplinary case were it not for a retaliatory motive. Because Warren has not shown direct evidence of retaliation nor a chronology of events from which retaliation may plausibly be inferred, his claim against Young is without merit.

## Qualified Immunity

The doctrine of qualified immunity applies to claims for monetary damages brought against a government official in his or her individual capacity. The Fifth Circuit has stated that a qualified immunity defense serves to shield a Government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005), *citing* Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001).

Although qualified immunity is nominally an affirmative defense, the plaintiff bears a heightened burden to negate it once it is properly raised. Brumfield, 551 F.3d at 326; *see also* McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has stated that to discharge this burden, the plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of the law which was clearly established at the time of the actions complained of. Atteberry, 430 F.3d at

9

253; Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). These two prongs may be considered in either order. Saucier v. Katz, 533 U.S. 194, 201 (2001).

In this case, Warren has not shown that a constitutional violation was committed, nor that either Shead or Young's actions were objectively unreasonable in light of existing law. His bare and conclusory allegations of retaliation are insufficient to overcome Warren's heightened burden to negate the defense of qualified immunity. The Defendants' motion for summary judgment should be granted on this basis as well.

## Conclusion

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank &

Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little, 37 F.3d 1069 at 1075. The court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Little, 37 F.3d at 1075.

In Barnes v. McCree, 273 Fed.Appx. 399, 2008 WL 1743890 (5th Cir., April 14, 2008), the plaintiff, a federal prisoner, complained that the defendants used excessive force against

11

him and displayed deliberate indifference to his serious medical needs. The district court granted the defendants' motion for summary judgment on the ground that Barnes had offered only "unsupported conclusions without presenting or adverting to any evidence that would have raised a genuine issue as to material fact." On appeal, the Fifth Circuit stated as follows:

> In opposition to the defendants' motions, which were supported by competent summary judgment evidence including affidavits, medical records, and a video tape of the use of limited force, Barnes offered only a 'mere scintilla' of competent evidence and general conclusions, allegations, and speculation, which are insufficient to defeat summary judgment. See Michaels v. Avitech, Inc., 202 F.3d 746, 754-55 (5th Cir. 2000); Alizadeh v. Safeway Stores, Inc., 802 F.2d 111, 113 (5th Cir. 1986).

In this case, Warren did not file a response to the Defendants' motion for summary judgment at all. A review of Warren's sworn pleadings and testimony shows that Warren has failed to come forward with more than a scintilla of competent summary judgment evidence, but instead relies on general conclusions, allegations, and speculation, none of which are sufficient to defeat summary judgment. For the plaintiff to meet his burden, however, the Fifth Circuit has stated that he must identify specific evidence in the record, and articulate the precise manner in which that evidence supports his claims. Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). As for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial. Stults, 76 F.3d at 656.

In other words, where a motion for summary judgment is filed, the movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. John v. State of Louisiana Bd. of Trustees for State Colleges and Universities, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district court has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Stults, 76 F.3d at 656; see also Johnson v. Deep East Texas Regional Narcotics Trafficking Task

Force, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

In this case, the competent summary judgment evidence shows that there are no disputed issues of material fact and that the Defendants are entitled to qualified immunity, and are therefore entitled to judgment in their favor as a matter of law. The Defendants' motion for summary judgment is meritorious, and it is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 49) is hereby GRANTED. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice. Finally, it is

ORDERED that any and all motions which may be pending in this cause are hereby DENIED.

**So ORDERED and SIGNED this 16th day of January, 2013.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE